## THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENT, *v*. GEORGE CLEMENTS, APPELLANT.

*Overdrawing of his account, by a bank officer — what must be shown to justify his conviction under section 600 of the Penal Code.*

To authorize the conviction of an officer of a bank indicted for knowingly overdrawing his account and thereby obtaining $690 in money in violation of the provisions of section 600 of the Penal Code, which declares that "an officer, agent, teller or clerk of any bank,  *  *  *  who knowingly overdraws his account with such bank, and thereby wrongfully obtains the money, notes or funds of such bank, is guilty of a misdemeanor," the fact that he did by means of the check, by which his account is alleged to have been overdrawn, wrongfully obtain the money, must be proved by the prosecution.

Proof of the possession by the bank of his check at a time when his account is overdrawn, although sufficient to presumptively show a credit in favor of the bank, on an accounting between the bank and the defendant, will not justify his conviction in a criminal action.

The transaction must be shown by which the defendant delivered the check to the bank and obtained the money therefor.

The mere fact that an officer of the bank has knowingly overdrawn his account, will not justify his conviction, unless it be shown that the money thereby obtained was "wrongfully obtained," as the word "wrongful" in the statute implies more than the mere want of funds in the bank.

APPEAL from a judgment of the Court of Oyer and Terminer of Washington county, convicting the defendant of a misdemeanor.

*Hughes & Northup*, for the appellant.

*Edgar Hull*, district attorney, for the People.

LEARNED, P. J. :

The defendant was indicted under section 600 of the Penal Code, which declares that an officer of any bank who knowingly overdraws his account with such bank, and thereby wrongfully obtains the money, notes or funds of such bank, is guilty of a misdemeanor. The defendant was cashier of the State Bank of Fort Edward from April, 1871, to the time when the bank closed its business, September 9, 1884. An action was commenced about that time by the People against the bank, and a receiver was appointed. His appointment seems to have been made September twentieth, and he took possession September twenty-second.

About the first of October, Mr. Ostrander, a bookkeeper, was employed by the receiver in the business of settling the affairs of the bank. By direction of the receiver he wrote up the accounts in the books of the bank as of the date of September ninth. The account of the defendant, as thus written up, shows no entries from August seventh to September eighth. Under date of September eighth there is a credit of $1,125. Under date of September ninth a debit of $153.50, another of $690, and another of eighty-five dollars and thirty-seven cents ; under date of September eighth a debit of forty-eight dollars and eighteen cents ; under date of September ninth a credit of $500, also of salary to date, $287.49, and a debit of $550.

The book, as thus written up, showed a balance against defendant of $2,583.96, which has been paid. There is evidence from which it might be found that the defendant agreed to that balance against him. A judgment was recovered against him therefor by the receiver, December 20, 1884. There were vouchers, used in looking over the account, which at some subsequent time were delivered to defendant, and it was thought by a witness that among them was a check for $690 ; but he had no personal knowledge on the subject.

On the trial, at the request of the prosecution, the defendant's counsel produced a check, dated July 25, 1884, on the said bank, payable to self or bearer, for $690, signed by defendant. And it might perhaps be inferred by the jury that this check was the voucher for the item of $690 debited to defendant, under date of September ninth, although there was no evidence on this point except the identity of the amounts.

An examination of the books of the bank by an accountant shows that on the books, as of the date of September eighth, after crediting defendant's salary that day, $1,125, the defendant's account was overdrawn $1,894.40; also that on the books, as of date of July 25, the defendant's account was overdrawn more than $2,800, and that it had been overdrawn for a long time prior thereto and during the interval between those dates.

Now, the first count of the indictment, to which the court limited the people, is for defendant's knowingly overdrawing his account on the 9th day of September, 1884, and thereby *obtaininy* $690 *in money.* The court held that the precise time named in the indictment was not material, if it was not so distant from the true time as to mislead the defendant, and that within the range between July twenty-five, the date of the check, and September nine, the date laid in the indictment, it was not material what time was laid. The facts above stated constitute in substance the proof given at the trial, which is material for us to consider.

We may assume then (but only for the purpose of examining an important question), that from and before July 25, 1884, to September ninth of the same year, defendant's account was overdrawn; that during that time there was no charge against his account of the check of $690; that he knew the condition of his account; that on the ninth of September this check of $690, dated July twenty-five, was charged to him on his account by direction of the receiver; that judgment was recovered against him for the balance; that such balance was paid, and this check, among other vouchers, was returned to him.

Now, taking this statement (which is the strongest view of the case for the prosecution), and assuming that this evidence would justify a finding that the defendant, by the check of $690, overdrew his account, there is no evidence that he thereby wrongfully obtained money, notes or funds of the bank.

The crime consists principally in such wrongful obtaining of money, as charged in the indictment. And the prosecution must show that the defendant did, by means of that check, wrongfully obtain money. If by that check he obtained money, that is, if, by presenting that check, he was paid money, or himself took money from the bank, that is a fact capable of proof.

The teller, for there was such an officer, could show the payment. Or if the defendant himself took the money, then the reduced amount of the cash on the day when it was taken could be shown. It is true that the mere possession of the check by the bank (assuming it to have been in the bank's possession) would presumptively show a credit in favor of the bank, on an accounting between the bank and the defendant. But when we come to proving a criminal charge against the defendant, something more is needed. The transaction must be shown by which the defendant delivered the check to the bank and obtained therefor money. Suppose, for instance, that on the twenty-fifth of July the defendant had been indebted to the bank for any cause, and being so indebted, had given this check as a voucher, then the check would not show that he had obtained money thereby from the bank.

A check is a direction to the bank to pay so much money and to charge the drawer therewith. As between the bank and the drawer the possession of the check is *prima facie* evidence that the bank has paid the money to some one. But when the people charge the criminal offense of obtaining money from the bank, they must show that the accused obtained the money ; not, of course, with his own hands, but to his own benefit. And they must show that such obtaining was by means of a check which overdrew his account. To illustrate : If one who has no money or credit at a bank draws a check thereon, and obtains money therefor from some third person, he may be guilty of a crime. (Penal Code, § 569.) But the mere possession of the check by such third person would be no evidence of the crime. Proof would have to be given of the obtaining of the money from such third person by such check.

The people insist that the fact (assuming now that it was proved), that the bank once had possession of the check is presumptive evidence on this trial that the defendant, by means thereof, obtained money from the bank, and that it was for the defendant to disprove this. But we think otherwise. Between the bank and the defendant this was *prima facie* evidence of an indebtedness. But in this criminal action this did not show that by means of the check the defendant obtained money from the bank.

There is still another word in the statute which we have not considered, and that is "wrongfully." The offense is the "wrongfully

obtaining " money. There is a meaning in this word, otherwise it would not have been inserted. If we should exclude that word and read the statute, that every officer who knowingly overdraws his account, and thereby obtains the money of the bank, is guilty, we should be giving a construction which we do not think was ever intended.

Banks are established to lend money, and it is not illegal to lend money to officers (under certain limitations). Money loaned on an individual note is no better secured than money advanced on a check. Each is a loan, evidenced by the written obligation of the borrower. To say then that if a bank officer, of undoubted wealth and responsibilty, should, knowingly, overdraw his account, and obtain thereby a few dollars, he would be guilty of a crime under this statute, seems to us incorrect.

It is not the mere obtaining, but the *wrongful* obtaining, which is aimed at. And " wrongful " implies more than the mere want of funds in the bank, because such want of funds is previously expressed in the statute by the word " overdraws." What shall in each case make the obtaining of money wrongful we need not say. The points we have thus discussed were presented on behalf of the defendant upon the trial in several ways by exceptions and by requests. We have thought it better to speak of the principles which should govern the case, rather than to comment on the exceptions.

The views we have stated clearly indicate where we think there was error to the defendant's prejudice. There are other points which we have not discussed, but which we do not say were not well taken.

Judgment and conviction reversed, new trial granted.

BOOKES and LANDON, JJ., concurred.

Judgment and conviction reversed, new trial granted.